UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHENANGO SPORTS, INC. and
CHENANGO CONTRACTING, INC.

    -against-                                       3:09-cv-01386-TJM-DEP

LABORERS' INTERNATIONAL UNION
OF N.A. #17, INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 825, and
SHAWN'S LAWNS INC.
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

**I.    INTRODUCTION**

Plaintiffs Chenango Sports, Inc., and Chenango Contracting, Inc., (collectively "Chenango" or "plaintiffs") commenced this action in New York State Supreme Court seeking, *inter alia*, to permanently stay or dismiss two labor arbitration proceedings commenced by Defendants Laborers' International Union of N.A. #17 ("Local 17") and International Union of Operating Engineers Local 825 ("Local 825") arising from the same circumstances. See Verified Compl., dkt. # 1. Local 825 removed the action to this Court, and Plaintiffs now move for an order permanently staying or dismissing the arbitration proceedings. See Not. of Motion, dkt. # 17. Local 825 opposes the motion and cross-moves for an order compelling the parties to submit to arbitration. See Not. of Cross-Motion, dkt. # 18. Local 17 has not responded to the motion. Plaintiffs oppose the

1

cross-motion. See Resp. in Opp., dkt. # 21. For the reasons that follow, Plaintiffs' motion is granted and the cross-motion is denied.

## II.   BACKGROUND

On November 26, 2007, the Marlboro Central School District ("School District") issued a Project Manual and drawings for certain work to be performed at the Marlboro High School ("the Project"). A portion of the Project included the installation of field turf on School District property. The installation of the field turf was part of "Phase II" of the Project.

In connection with the Project, a Project Labor Agreement ("PLA") was negotiated between the School District and the Hudson Valley Building and Construction Trades Council ("BCTC") for the "on-site construction work performed" on the Project. PLA Art. 3, §1. The PLA was executed on February 29, 2008 by the School District and the BCTC. Defendants Local 825 and Laborers' International Union of N.A. #17 ("Local 17") are affiliated local unions of the BCTC and are listed as signatories on the PLA. However, these local unions did not sign the PLA at the time it was filed. Local 825 contends that the practice of the BCTC is to file the PLA immediately and gather signatures of its affiliate locals thereafter. Local 825 further contends that it signed the PLA "on or about March, 2008" and that "Local 17 signed the PLA in February, 2008." Plaintiffs dispute this and contend they never received an executed signature page from either union.[1]

On November 17, 2008, Shawn's Lawns, Inc. ("Shawn's Lawns") was awarded a Standard Form Agreement Between Owner and Contractor for Phase II of the Project (the

---

[1] Plaintiffs point out that the Project Manual was modified by Bid Addendum # 5 on October 21, 2008 but that signatures from these unions are not contained in the PLA that is part of this bid addendum.

"Contract").  As part of the Contract, Shawn's Lawns included a bid from Chenango, dated November 17, 2008, for the installation of the field turf.  On June 2, 2009 Shawn's Lawns and Chenango entered into a Standard Form Agreement Between Contractor and Subcontractor for the installation of the synthetic grass surfacing for the Project.

The parties dispute what occurred next.  Plaintiffs assert that Chenango Sports, Inc. ("Chenango Sports") started work on the field turf on July 28, 2009.  On the morning of that day, a union representative from Local 17 visited the work site and requested that Chenango Sports put two Local 17 laborers on the payroll.  According to Plaintiffs, one of the owners of Chenango Sports "explained that there [was] no laborer jurisdiction work involved in the sophisticated installation of artificial field turf and that all of the work is performed within the sole jurisdiction of the Carpenters designation of Carpet Layers, all of which had been determined by the New York State Department of Labor."  Rhoades 9/8/10 Aff. ¶ 14.  The owner further explained that Chenango Sports "is a signatory to a union agreement with Carpenters Local 42 who [*sic*] has the jurisdiction for this work."  Id. On the same morning or the following day, a representative from Local 825 contacted Chenango Sports, made a similar request, and received a similar response from Chenango Sports.  See Verified Compl. ¶ 13; Answer § 13.

Local 825 contends that on July 29, 2009,

> Shawn's Lawns initially assigned the operation of equipment necessary to perform the installation of the field turf under Bid Addendum # 5 for the Project and the PLA to Local 825.  Shortly thereafter, a representative from Carpenters Local 42 arrived at the job site and claimed that the operation of equipment was within the full jurisdiction of Local 42.  Thereafter, Chenango and/or Shawn's Lawns stopped using Local 825 labor for the operation of equipment and instead reassigned the work to Carpenters Local 42.

Storno Aff. ¶ 3.

Plaintiffs respond that Local 825's contention "is a complete fabrication to try and make the Court think that somehow Chenango changed its mind from using the Operating Engineers and switched to the Carpenters." Rhoades 10/6/10 Reply Aff. ¶ 8. Plaintiffs maintain that "at no time did Chenango ever start using or stop using Local 825 on the Marlboro project." Id. Plaintiffs theorize that Local 825 might have been a party to a collective bargaining agreement with Shawn's Lawns that applied to "the normal and ordinary site work that is apart from the specialized field turf installation which was not within Local 825's jurisdiction" and which might have been a reason "why Local 825 would not want to be a committed signatory to the PLA." Id. ¶ 7. There is no dispute that Carpenters Local 42 is not an affiliated local union of the BCTC and is not listed as a signatory to the PLA.

On July 30, 2009, a representative of the Carpenters Local 42 met with representatives of Local 17 and Local 825 and the Local 42 representative explained "the exclusive jurisdiction of the Carpenters for this artificial field turf installation work." Rhoades 9/8/10 Aff. ¶ 14. On August 5, 2009, the Director of Jurisdiction of the International Union of Operating Engineers instituted a jurisdictional dispute regarding the installation of the field turf at the School District. See Verified Compl. ¶ 17 & Ex. C; Answer ¶ 17. Local 17 did not file a jurisdictional dispute. On August 14, 2009, Local 825 filed a grievance and demand for arbitration under Article 9 of the PLA[2] concerning the

---

[2] Article 9 of the PLA provides a grievance and arbitration procedure for "[a]ny question, dispute or claim arising out of, or involving the interpretation or application of [the PLA] (other than jurisdictional disputes ....]." PLA Art. 9. On August 14, 2009, Local 825 filed an Article 9 grievance against Chenango and others alleging that Chenango's assignment of work for the installation of field turf violated the PLA. On August 28, 2009, Local 825 submitted a demand for arbitration with the American Arbitration Association to arbitrate the grievance it had filed against Chenango and others.

assignment of work for the installation of the field turf.  See Rhoades 9/8/10 Aff. ¶¶ 16-17; Rhoades 10/6/10 Aff. ¶¶ 11-14; Verified Compl. ¶ 21.  Local 17 also filed a demand for arbitration arising from the same circumstances although it had not filed a grievance on the issue.  Verified Compl. ¶ 37.   Plaintiffs contend that by filing the grievance and demand for arbitration, Local 825 withdrew or abandoned its jurisdictional dispute. Id. ¶¶ 19, 26.

Plaintiffs assert in the complaint and on the instant motion that the underlying arbitration proceedings commenced by Local 825 and Local 17 should be permanently enjoined or dismissed.  Defendant Local 17 has not responded to the motion and, as indicated above, Local 825 cross-moves for an order compelling arbitration.

## III.    DISCUSSION

Plaintiffs acknowledge that "[a]s is typical on any significant public construction project, including the Marlboro School project, a specific set of documents make up the overall contract or contract documents.  These contract documents include the particular prime contractor's contract, the general conditions for the project, the specifications for the work to be performed on the project, and the various drawings that depict the work area and work of the several prime contractors."  However, Plaintiffs contend that the PLA identified and included as part of the Contract documents did not contain a signature commitment by Local 825.  Moreover, Plaintiffs point out that the Contract provides that "[t]he Contract documents contain the entire agreement between Contractor and Owner, and no oral statements or prior written matter not specifically incorporated in the Contract documents shall be of any force or effect."  Accordingly, Plaintiffs argue:

> Regardless of what the Operating Engineers 825 may argue to the Court

5

> about when or how they signed the Project Labor Agreement, that signature page -if it exists- by the Operating Engineers 825 was clearly not part of the official Contract Documents for this Marlboro Project and "shall (not) be of any force or effect".  The Plaintiffs have no contractual privity with the defendant Operating Engineers Local 825 to arbitrate any issues.

Plt. MOL p. 3.

Resolution of this argument is distinctly factual in nature.  If Shawn's Lawns, which subcontracted the turf installation to Chenango Sports, "initially assigned the operation of equipment necessary to perform the installation of the field turf" to Local 825 as Local 825 contends, then a fact finder could conceivably conclude that the contract documents indicate that Local 825 was a party to the PLA even if its signature did not appear on the contract documents provided to Chenango Sports.  However, resolution of this issue is impossible on the present record because the parties proceed by way of competing affidavits which do not mirror the other and which do not qualify as Local Rule 7.1(a)(3) statements of material facts not in dispute.  See N.Y.N.D. L.R. 7.1(a)(3).[3]  On the basis of the factual dispute as to whether Local 825 was a signatory or party to the PLA, both motions must be denied on this ground.

However, an alternative basis exist to resolve the motions.  Assuming, *arguendo,* that Local 825 is a party to the PLA such that there is privity between that union and Plaintiffs (as Local 825 argues), the subject arbitration proceedings commenced under Article 9 of the PLA would be of no legal significance if the underlying dispute is jurisdictional in nature.  This is because jurisdictional disputes are expressly excluded from

---

[3]In fact, the parties do not identify the procedural mechanism by which they proceed although the use of the affidavits indicates a Rule 56-type motion.

Article 9 of the PLA, see fn. 2, *supra*, and instead are governed by Article 10 of the PLA.[4]

> The Supreme Court has noted that "jurisdiction" is a word with "many, too many, meanings." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90, 118 S. Ct. 1003, 140 L. Ed.2d 210 (1998) (internal quotation marks omitted). In the context of labor agreements, a jurisdictional dispute is one "between two or more groups of employees over which is entitled to do certain work for an employer." N.L.R.B. v. Radio & Television Broad. Eng'rs Union, 364 U.S. 573, 579, 81 S. Ct. 330, 5 L .Ed.2d 302 (1961); see also Shank/Balfour Beatty v. Int'l Bhd. of Elec. Workers Local 99, 497 F.3d 83, 91 (1st Cir. 2007) ("The employer's main interest in ... jurisdictional disputes is to avoid being subject to inconsistent obligations.").

Mascaro Const. Co. L.P. v. Local Union No. 210, 2010 WL 3199683, at * 1 (2d Cir. Aug. 2010).

Here, the dispute is between unions to do the work of installing the field turf for the Project. Just as a claim by two unions to perform the same work under a collective bargaining agreement is jurisdictional in nature, so too is the dispute between Local 825 and Local 42 to perform the same work under the PLA. See id. at * 2 (a union's claim for breach of a collective bargaining agreement based on the assignment of work to another union is jurisdictional in nature)(citing Constr. Indus. Emp'rs Ass'n. v. Local No. 210, Laborers Int'l Union of N. Am., 580 F.3d 89, 93 (2d Cir. 2009) (*per curiam*) (holding that dispute between Laborers and Carpenters over right to perform certain caisson work "fit[s] into the classic definition of a jurisdictional dispute")). The fact that the dispute is cast as

---

[4]PLA Article 10 governs jurisdictional disputes and provides that "[t]he assignment of work will be solely the responsibility of the Contractor performing the work involved; and such work assignments will be in accordance with the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the 'Plan') or any successor Plan." PLA Art. 10, §2. A union "having a jurisdictional dispute with respect to Project work assigned to another Union will submit the dispute in writing to the Administrator, Plan for the Settlement of Jurisdictional Disputes in the Construction Industry within seventy two (72) hours and send a copy of the letter to the other Contractor involved, and the Local Union involved." Id. §3(a). An arbitrator under the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry decides the jurisdictional issues raised in such a dispute. PLA Art. 10, §4.

an enforcement action against the employer does not change the jurisdictional nature of the underlying dispute. See Laborers Intern. Union of North America, Local 210 v. McKinney Drilling Co., 2010 WL 3096042, at *1 (2d Cir. Aug. 09, 2010)("A union's action to enforce the terms of its CBA with respect to work performed by a non-union member is necessarily a claim for the work. And when the work at issue is performed by members of a different union, the enforcement claim presents a jurisdictional dispute.")(citations omitted).  Moreover, the timely resolution of this dispute in accordance with the procedure set forth in Article 10 would have prevented Chenango Sports and Shawn's Lawns from being subject to inconsistent obligations.  This and the Director of Jurisdiction of the International Union of Operating Engineers instituted a jurisdictional dispute regarding the installation of the field turf at the School District further compels the conclusion that the dispute was jurisdictional in nature. See Beatty, 497 F.3d at 91.

Because the underlying arbitration proceedings were commenced under Article 9 of the PLA which expressly excludes jurisdictional disputes, and because the underlying dispute is jurisdictional in nature, the underlying arbitration proceedings are of no legal significance.  Accordingly, Plaintiffs' motion to dismiss the underlying arbitration proceedings is granted and Defendant Local 825's motion to compel the underlying arbitration proceeding is denied.

**IV.  CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to permanently stay and/or dismiss the underlying arbitration proceedings [dkt. # 17]  is **GRANTED** and the subject arbitration proceedings are **DISMISSED**.  Defendant Local 825's motion to compel

arbitration [dkt. # 18] is **DENIED**.

Having dismissed the only federal question before the Court, the Court declines to exercise supplemental jurisdiction over the remaining state law breach of contract claim brought by Plaintiffs against Defendant Sean's Lawn's, Inc.  This claim is remanded to the New York Supreme Court, Ulster County.  The Clerk of the Court is directed to close the file in this matter after the remaining claim has been remanded to state court.

**IT IS SO ORDERED**

DATED: December 22, 2010

_____
Thomas J. McAvoy
Senior, U.S. District Judge